UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Richard Chapman**  *Plaintiff*,  vs.  **United We Collect, Inc.**  *Defendant* | Case No.: 6:23-cv-2371  **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Richard Chapman** ("**Mr. Chapman**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **United We Collect, Inc.** ("**United**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Chapman against United for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**") and for violations of the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. United is subject to the provisions of the FDCPA and the FCRA and to the jurisdiction of this Court pursuant to Florida Statute § 48.193 and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of were committed and / or caused by United within Lake County.

## PARTIES

### Mr. Chapman

5. **Mr. Chapman** is a natural person residing in the City of Mascotte, Lake County, Florida, and a *Consumer* as defined by the FDCPA and the FCRA, 15 U.S.C. § 1692a(3) and 15 U.S.C. §1681a(c), respectively.

### United

6. **United** is a Florida corporation with a primary business address of **106 Commerce St., Suite 101, Lake Mary, FL 32746.**

7. Prior to July 3, 2019, Defendant was known as United Collection Service, Inc.

8. United is registered to conduct business in the State of Florida, where its registered agent is **Thomas Hynes, 106 Commerce St., Suite 101, Lake Mary, FL 32746.**

## Defendant Is A Debt Collector

9. United is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses postal mail or another instrumentality of commerce, interstate and within the State of Florida, for its business, the principal purposes of which is the collection of debts. Alternatively, it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

## Mr. Chapman Hit By At-Fault Driver

10. In or around March 2020, Mr. Chapman was hit by another car while driving in Lake County, resulting in substantial damage to both cars and seriously injuring Mr. Chapman.

11. The other driver was found to be at fault in the accident.

12. The accident was witnessed by several bystanders, at least one of whom called 911.

13. As the result of the bystander's 911 calls, Lake County Emergency Medical Services ("Lake County EMS") responded, extricated Mr. Chapman from the crushed vehicle, and transported him, while incapacitated, to a hospital.

14. Mr. Chapman had medical insurance through his employer.

15. Mr. Chapman also had Personal Injury Protection ("PIP") coverage through his car insurance carrier.

16. Further, Mr. Chapman retained a personal-injury attorney who sought settlement from the at-fault driver's insurance company and worked to ensure any medical debts not covered by insurance were paid.

17. Mr. Chapman turned over any medical bills he received to his legal counsel.

18. However, Lake County EMS apparently failed to properly seek reimbursement from Mr. Chapman's insurance carrier, his PIP carrier, or his attorney, creating a purported $596 outstanding balance owed (the "Debt").

19. In the alternative, Lake County EMS did received payment from one of the three avenues aforementioned, and it failed to properly record payment.

20. The Debt did not arise from a written contract between Lake County EMS and Mr. Chapman.

21. There was no verbal or written agreement to pay Lake County EMS any particular amount for its services.

22. Mr. Chapman could not have possibly been able to provide consent at the time the debt was incurred as he was incapacitated from the car wreck.

23. Nonetheless, around November 2020, Lake County EMS transferred the account to United for collection.

24. Because the debt arose from services which were for family, personal, or household purposes, specifically, *personal medical services*, the Debt meets the definition of *Debt* as defined by the FDCPA, 15 U.S.C. § 1692a(5).

25. While the debt is a consumer debt, it is not a "credit transaction" under the FCRA. *See* 15 U.S.C. § 1681b(a)(3)(A).

26. A *Credit Transaction* involving the consumer is one in which the consumer **voluntarily** participates and enters into an agreement to receive goods or services in advance of payment, with the consent of both parties. See *Pintos v. Pacific Creditors Association*, 504 F. 3d 792, 798 (9th Cir. 2007); *Miller v. Trans Union LLC*, No. 06 C 2883 at *7 (N.D. Ill. Feb. 28, 2007); *Rodriguez v. Experian Info. Sols., Inc.*, Case No. C15-01224RAJ, at *9 (W.D. Wash. Jul. 25, 2016).

27. While a patient in clear need of medical attention is presumed to consent to medical treatment and can be held legally liable for the payment of reasonable fees, Mr. Chapman did not make an *affirmative* request for deferred payment arrangements.

28. Mr. Chapman did not ask to be transported by Lake County EMS; rather, emergency medical service workers determined that his condition required evaluation by specially trained doctors in response to a 911 call made by another person and transported him to a hospital.

29. Therefore, Mr. Chapman did not engage in a voluntary request for services for which he agreed to pay later.

30. The medical services rendered to Mr. Chapman when he was incapacitated therefore did not create a Credit Transaction under the FCRA, because the Debt was not voluntarily incurred, nor were extended payment terms requested.

31. Moreover, to be a Credit Transaction, there must be a creditor, *e.g.*, Lake County EMS, who agrees to provide goods or services while allowing the consumer to make payment at a later date.

32. United reported the purported Debt as an unpaid collection account to multiple nationwide CRAs, stating to the CRAs that the Debt was due and payable *the same day* services were incurred.

33. United reported the *Date of First Delinquency* ("DOFD") to Experian Information Solutions ("Experian") as having occurred in March 2020, when the accident occurred.

34. Therefore, United knew the transaction was not a *Credit Transaction*, as it reported that the Debt was past due on the very day it was allegedly incurred.

35. United reported to Experian the $596 balance was an unpaid collection balance for which Mr. Chapman was solely liable. **SEE PLAINTIFF'S EXHIBIT A.**

36. Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases,

that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

37. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services.

38. The CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

39. Because consumer credit reporting information is such sensitive data, with far reaching implications for consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

40. In cooperation with major CRAs such as Trans Union and Equifax, the CDIA publishes Metro 2 reporting standards ("Metro 2") to assist furnishers with their compliance requirements under the FCRA.

41. Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

42. FICO® credit scores, developed by the Fair Isaac Corporation, are the most commonly used credit scoring system in the United States.

43. FICO® credit scores utilize data reported by CRAs and furnishers which are, ostensibly, in compliance with Metro 2 standards.

44. United knows, or should know, that entities who perform credit risk scoring (*e.g.*, FICO scores) and other functions utilizing the data reported by United assume United's compliance with Metro 2 standards in reporting consumer information.

45. In March 2016, the major CRAs announced their *National Consumer Assistance Plan* ("**NCAP**"), which was implemented to prevent further action from federal regulatory agencies.

46. The major CRAs provided copies of this new guidance to their furnishers of data, including Defendant (then known as United Collection Bureau, Inc.), in May 2016.

47. Metro 2 guidelines were updated as part of the NCAP and, effective June 15, 2016, debt collectors were instructed to *not* report debts that "did not arise from a consumer contract or agreement to pay."

48. The Debt – even assuming, *arguendo*, is actually unpaid, clearly did not arise from a consumer contract or agreement to pay.

49. Despite this guidance being in effect for more than seven years and the debt no arising from a contract or agreement to pay, United reported the $596 "debt" to Experian as part of its collection efforts.

50. In May 2023, Mr. Chapman disputed United's reported information to Experian, stating that he had no debt for which he was liable or for which was properly categorized as a credit transaction.

51. Experian sent United an *Automated Consumer Dispute Verification* Request ("ACDV") through a system known as e-OSCAR.

52. United responded to the ACDV, stating that its tradeline was correct and required no modification of any kind. **SEE PLAINTIFF'S EXHIBIT A.**

53. If a furnisher of data to a CRA decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc. (11th Cir.) 827 F.3d 1295 (2016)*

54. United's verification of factually impossible information, *e.g.*, a non-reportable debt pursuant to Metro 2 guidelines was, somehow, actually a reportable debt, establishes its procedures to investigate disputed information were derelict. Beyond this, United could not have obtained information suggesting this was true because it is not true. United quickly clicked a check-box on the electronic ACDV, confirming its report was accurate, with no real investigation.

55. United made no actual inquiry with Lake County EMS to investigate if Mr. Chapman's insurance, his PIP coverage, and/or his personal injury attorney had provided payment.

56. There is no plausible explanation as to how United could determine that Mr. Chapman did not dispute the information appearing on his report.

57. Communication of credit information known to be false in "violation of §1692e(8) is sufficient to show an injury-in-fact… An inaccurate credit report produces a variety of negative effects." See *Evans v. Portfolio Recovery Associates,* 889 F. 3d 337, 345 (7th Cir 2018).

58. In September 2023, Mr. Chapman made another dispute to Experian, reiterating he did not owe the debt and that, in any matter, it was not a credit transaction subject to reporting.

59. Experian sent United another ACDV.

60. United quickly returned the ACDV to Experian, once again confirming it had "verified" its information was accurate.

61. United once again failed to make any reasonable investigation into the dispute.

62. United has re-reported the Debt to Experian as recently as December 1, 2023. **SEE PLAINTIFF'S EXHIBIT B.**

63. United's reports of the Debt to the CRAs were *Communications* as defined by 15 U.S.C. § 1692a(2) and were done in connection with collection of the debt.

64. Multiple creditors, and potential creditors, have received Mr. Chapman's credit report from Experian containing United's false and highly-derogatory tradeline, including at least two instances to a mortgage lender Mr. Chapman had applied to, to finance a home for him and his family.

65. The presence of United's collection tradeline caused severe damage to Mr. Chapman's credit scores, which resulted in denials of credit and other adverse economic consequences, in addition to emotional distress for having his credit ruined by a debt collector pursuing him for a medical bill concerning an accident in which Mr. Chapman was almost killed by someone else's negligence.

66. Mr. Chapman has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

67. Mr. Chapman adopts and incorporates paragraphs 1 – 66 as if fully restated herein.

68. United violated **15 U.S.C. § 1692e(2)(a)** when it made a false representation about the character and amount of a debt by representing to Experian the Debt arose from a contract or agreement to pay, when it did not, and was thus unreportable, and when it represented that Mr. Chapman was himself personally liable for the Debt.

69. A debt collector's actions are subject to strict liability under 1692e(2)(a); *see Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("[Section] 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period.").

70. United violated **15 U.S.C. § 1692e and 1692e(10)** when it made false and misleading representations in an attempt to collect a debt and/or obtain information about Mr. Chapman by representing to Experian the Debt arose from a contract or agreement to pay, when it did not, and was thus unreportable, and when it represented that Mr. Chapman was himself personally liable for the Debt..

71. United violated **15 U.S.C. § 1692e(8)** when it communicated credit information which was known to be false, when it certified to at least one CRA that the underlying debt had resulted from a consumer contract or agreement to pay, when it knew, or should have known, it had not.

72. United's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Chapman respectfully requests this Honorable Court enter judgment against United for:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

### COUNT II
### VIOLATION OF THE FCRA

73. Mr. Chapman adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

74. United violated **15 U.S.C. § 1681s-2(b)** when it failed to make a reasonable investigation after notice of dispute from Experian concerning the Debt since its investigation failed to determine that a debt which was not reportable pursuant to Metro 2 guidelines was, nonetheless, reportable. United also failed make any reasonably inquiry with Lake County EMS into the matter.

75. United's conduct renders it liable under the FCRA to Mr. Chapman in a statutory amount up to $1,000 *per incident*.

**WHEREFORE,** Mr. Chapman respectfully requests this Honorable Court enter judgment against United for:

a. The greater of statutory damages of **$1,000** for each violation of the FCRA (for a total of **$2,000**) or Mr. Chapman's unspecified actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorney's fees pursuant to 15 U.S.C. §1681n(a)(3) and / or 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper

<u>**JURY TRIAL DEMANDED**</u>

Mr. Chapman hereby demands a jury trial on all issues so triable.

Respectfully submitted on **December 11, 2023**, by:

**SERAPH LEGAL, P.A.**

*/s/ Thomas M. Bonan*
Thomas M. Bonan Esq.
Florida Bar No.: 118103
2124 W Kennedy Blvd., Suite A
Tampa, Florida 33606
Tel: 813-567-1230 (Ext: 302)
Fax: 855-500-0705
TBonan@SeraphLegal.com
*Counsel for Plaintiff*

**ATTACHED EXHIBITS LIST**
A	Mr. Chapman's Experian Consumer Disclosure, September 6, 2023, United Tradeline – Excerpt
B	Mr. Chapman's Experian Consumer Disclosure, December 1, 2023, United Tradeline - Excerpt